## 7143. WILLINGHAM'S SONS v. McGUFFIN.

1. "Where an owner has given to another such evidence of the right of
selling his goods as, according to the custom of trade or the common
understanding of the world, usually accompanies the authority of dis-
posal, or has given the external indicia of the right of disposing of his
property, a sale to an innocent purchaser divests the true owner's title."
"A title obtained by fraud, though voidable in the vendee, will be pro-
tected in a bona fide purchaser without notice." Civil Code, §§ 4119,
4120; *Commercial Bank* v. *Armsby Co.*, 120 *Ga.* 74 (47 S. E. 589, 65 L.
R. A. 443). See also, in this connection, *American National Bank* v.
*Lee*, 124 *Ga.* 863 (53 S. E. 268); *National Bank of Webb City* v.
*Everett*, 136 *Ga.* 372 (71 S. E. 660).

(a) The case of *Bergan* v. *Magnus*, 98 *Ga.* 514 (25 S. E. 570), is distin-
guishable on its facts. In that case, though the consignee may have
obtained actual possession of the property, it does not appear that a bill
of lading, made out in his name or endorsed to him, and thereby im-
porting authority on his part to dispose of the property, was conveyed
into his hands by the act of the owner. The case of *Mathewson* v. *Bel-
mont Flouring Mills Co.*, 76 *Ga.* 357, is also distinguishable; for, while
the bill of lading in that case was placed in the hands of the consignees
under an agreement that only upon the signing and return of the ac-
companying draft would the sale be consummated and title pass, the
consignees in possession of the bill of lading did not convey it to an
innocent third person for value, but endeavored to transfer title to the
property to an assignee appointed by them for the benefit of their cred-
itors, and who therefore stood in their shoes and was subrogated to
their rights, so far as the consignor was concerned, and it was against
this assignee that the action of trover was brought. In *Wilson* v.
*Comer*, 125 *Ga.* 500 (54 S. E. 355, 114 Am. St. R. 245), the action of
trover was brought by the consignor against the consignee, and not
against a third person, and the court held that no title passed, since
the express condition that the property was to be paid for upon delivery
was not performed.

2. Where one ships to another a carload of shingles and forwards by mail
to the consignee the bill of lading, and makes a draft against the con-
signee for a half of the purchase-price of the shingles, under an agree-
ment that the consignee shall pay this amount on receipt of the bill of
lading, and that the remainder of the purchase-price shall be paid after
the consignee has enjoyed an opportunity to inspect the car of shingles,
and the consignee receives the bill of lading but fails to pay the draft,
and transfers to a third person the property described therein, and that
person, for value, transfers the property to another, who purchases in
good faith and with no notice of any defect in the title to the property
or of any fraud on the part of the original consignee, an action of trover
can not be maintained against the last-named purchaser.

3. The appellate division of the municipal court of Atlanta erred in re-
fusing to grant a new trial, for the reasons indicated above; and since
the ruling made above will necessarily control the case, unless knowl-

edge on the part of the defendant as to the terms and conditions under which the original consignee obtained possession of the bill of lading is shown, it is not necessary to refer to assignments of error not covered by that ruling, and relating to matters which probably will not recur on another trial.

DECIDED OCTOBER 18, 1916.

Trover; from municipal court of Atlanta—December 8, 1915.

*A. E. Wilson*, for plaintiff in error.   *P. L. Lindsay*, contra.

WADE, C. J.   We do not think it necessary to amplify the rulings made in the headnotes, but, in order that they may be clearly understood, the following statement of facts, taken from the record in the case, is appended: R. P. McGuffin brought an action of trover against E. G. Willingham's Sons for the recovery of a carload of shingles of the alleged value of $140.   On the trial the plaintiff testified as follows: "That he shipped the property described in his petition to W. A. Peebles; that the conditions upon which he shipped the car of shingles were that upon receipt of the bill of lading, consignee was to honor plaintiff's draft for one half of the purchase-price; that the remainder of the purchase-price would be paid when the said Peebles had had opportunity to inspect said car of shingles; that in accordance with his agreement with the said Peebles he shipped said carload of shingles and mailed him the bill of lading; that thereupon he drew draft on the said Peebles for one half the purchase-price of the said carload of shingles, as per their agreement; that after the expiration of several days the draft thus made on the said Peebles was returned by the bank in which it had been deposited, marked 'unpaid;' that thereupon he caught a train and came to Atlanta for the purpose of having the matter adjusted; that upon reaching Atlanta, he went in search of the said Peebles and could not locate said party; nor could he locate the Georgia Lumber and Grain Company, the name in which he, said Peebles, had ordered said shingles, but found that he, the said Peebles, had sold the carload of shingles, and that the car of shingles was in the hands of E. G. Willingham's Sons, defendants in this case; that upon said Peebles's failure and refusal to pay for said shingles, he proceeded to employ counsel; that accompanied by his counsel, thus employed, he went to see defendants for the purpose of demanding his property; that he was informed by one of the defendants that they had said carload of shingles, but that they had bought same from E. E. Lowe

in due course of trade, and did not know him (the plaintiff) in the transaction; that after explaining the above circumstances to said defendant to whom he was talking, he demanded said property, and said defendant agreed that they would not pay E. E. Lowe for said shingles until he, said plaintiff, had had opportunity to take legal steps to protect his interests; that while talking with said defendant he gave him a written demand for the said shingles." On redirect examination the witness testified, "that the property described in petition belonged to him and was of the value of $140; that not knowing said Peebles he could not extend him any credit, and that the sale was a cash sale, and that he so informed said defendants."

There was evidence for the defendants, which was not contradicted, that the shingles were purchased in due course of trade from E. E. Lowe Lumber Company, with no knowledge of the alleged title of the plaintiff thereto, and that the defendants, after the purchase of the shingles by them, had delayed payment therefor for several days in order to give the plaintiff an opportunity to protect his rights in the premises, by proceeding either against the original consignee or against the Lowe Lumber Company, and that payment for the shingles was finally made by the defendants to the Lowe Lumber Company within 10 days from the date of the purchase, in order to procure the advantage of the discount to be allowed by agreement if payment was made within ten days.

The record clearly indicates that the original consignee was in possession of a bill of lading from the plaintiff, showing the shipment of the property to him; and, under the ruling in *Commercial Bank* v. *Armsby Co.,* supra, as well as under the clear provisions of the code sections cited in the headnotes, innocent parties purchasing from the person placed in possession of the indicia of ownership by the actual owner himself, acquiring the property for value and without notice of any limitation of authority or of any defect in the title claimed by the consignee in possession of the bill of lading, must be protected in the enjoyment of the property so purchased, or the stability of all commercial dealings of like character would be destroyed.

For the reasons stated in the headnotes, the judgment of the appellate division of the municipal court of Atlanta is   *Reversed.*